**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 02-1407

PHILLIP K. McGRAW,

Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 01-CR-426-B)**

---

Richard J. Banta, Denver, Colorado, for Defendant-Appellant.

James C. Murphy (John W. Suthers, United States Attorney; Jennifer Mardosz, Assistant United States Attorney, with him on the brief), Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

---

Before **MURPHY**, **BRORBY**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

Phillip K. McGraw's legal troubles began when he e-mailed a website advertising "fantasy tours." Rather than reaching an operation that organizes sex with children, Mr. McGraw reached undercover law enforcement officers. An officer responded with a telephone number Mr. McGraw could call for more information about the "tours." Mr. McGraw promptly called the number and, during the ensuing conversation, told the undercover officer he was interested in having sexual contact with "white males between the ages of 12 and 15." Subsequently, Mr. McGraw exchanged several e-mails with undercover agents discussing the timing of his "tour" and providing further details about the type of boy he wanted. Expecting a sexual encounter with a twelve-year-old boy, Mr. McGraw traveled from Alabama to Colorado and met an undercover officer. After Mr. McGraw displayed the remaining money he owed for the "tour," the officer arrested Mr. McGraw. Officers then discovered Mr. McGraw had brought a laptop computer to Colorado containing over 6,500 images of child pornography and 250 child-pornographic movies.

Based on these facts, Mr. McGraw pled guilty to traveling in interstate commerce for the purpose of engaging in a sexual act with a minor in violation of 18 U.S.C. § 2423(b) and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The plea agreement noted the government's belief that Mr. McGraw's offense level for sentencing purposes should be increased by two

levels pursuant to United States Sentencing Guidelines § 2A3.2(b)(3) because Mr. McGraw "used a computer or Internet-access device to facilitate his transportation or travel to engage in the prohibited sexual conduct." R. vol. 1, doc. 47 at 6. Mr. McGraw disagreed and reserved the right to appeal his sentence.

At the sentencing hearing, both parties presented oral argument concerning the applicability of § 2A3.2(b)(3) of the Sentencing Guidelines. The district court agreed with the government and imposed the two-level increase under U.S.S.G. § 2A3.2(b)(3)(B). Ultimately, the district court sentenced Mr. McGraw to forty-one months' imprisonment.

On appeal, Mr. McGraw argues the district court incorrectly interpreted and applied the two-point enhancement in § 2A3.2(b)(3)(B) of the Sentencing Guidelines. Appellant's Br. 4. The district court's interpretation of a sentencing guideline is a question of law we review de novo. *See United States v. Smith*, 133 F.3d 737, 744 (10th Cir. 1997); *United States v. Farnsworth*, 92 F.3d 1001, 1007 (10th Cir. 1996). Exercising jurisdiction under 18 U.S.C. § 3742(a)(2), we affirm.

**DISCUSSION**

Section 2A3.2(b)(3)(B) of the Guidelines provides a two-point enhancement if the defendant uses "a computer or Internet-access

device . . . to . . . facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2(b)(3)(B) (the "Guideline"). In a companion case decided today, we considered whether § 2A3.2(b)(3)(B) of the Guidelines applies when a defendant is apprehended in a sting operation, like the one in this case, where the law enforcement officer poses as someone who has custody, care, or control of a fictitious child. *United States v. Robertson*, No.02-1388 (10th Cir. Dec. 2, 2003) (published). We concluded that the enhancement applies in such cases, just as it does when the undercover officer poses as a child. *Id.*, slip op. at 20-21. Furthermore, because we found this to be clear in light of the text and purpose of Guideline 2A3.2 and its application notes, we must reject Mr. McGraw's contention that the rule of lenity applies here. *See United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993) ("The rule's application is limited to cases where, after reviewing all available relevant materials, the court is still left with an ambiguous statute.").

The one remaining issue in this case is whether Mr. McGraw's computer and internet use facilitated his travel. He argues that the Guideline should apply only "where there is a direct nexus between the use of a computer and the making of transportation or travel arrangements," Appellant's Br. at 4, and cites as a paradigmatic case "the example given in Application Note 5 of purchasing an airline ticket on line," *id.* at 8. Although the brief is not entirely clear on this

point, Mr. McGraw appears to be arguing that while he did use a computer to communicate with the undercover officer about his desired sexual activity, he did not purchase his tickets online and made other arrangements for the "fantasy tour" by phone, and thus did not use the computer to facilitate his travel *per se*.

Application Note 5 reads as follows:

> Subsection (b)(3) is intended to apply only to the use of a computer or an Internet-access device to communicate directly with the victim or with a person who exercises custody, care, or supervisory control of the victim. Accordingly, the enhancement would not apply to the use of a computer or an Internet-access device to obtain airline tickets for the victim from an airline's Internet site.

U.S.S.G. § 2A3.2, cmt. n.5. Thus, far from being the paradigmatic case of using a computer to facilitate travel under the Guideline, online airline ticket purchases are specifically *excluded* from the definition, because there the computer use has "no immediate connection to sexual predation." *Robertson*, slip op. at 17. Indeed, the fact that the actual purchase of airline tickets online is *not* covered suggests that the Commission did not mean to limit the enhancement's application to computer use that directly assists a defendant in going from point A to point B. In our view, arranging the place and time of a tryst clearly constitutes "facilitation" of transportation or travel, and though the record is somewhat thin, it appears that enough of the logistics of the trip were negotiated by e-mail to conclude on this basis that Mr. McGraw used a computer to facilitate his travel.

But in light of the purpose of the enhancement, we need not rely on the inessential details of which final arrangements were made by e-mail and which by phone, which may vary widely from case to case. Indeed, it is difficult to see why Congress would want to differentiate those sexual predators who actually book airlines and hotels online from those who, having used the internet to find children to molest, make their travel arrangements by phone or otherwise. The reason use of the internet warrants enhanced punishment is not that it can be used, like a telephone, for point-to-point communications with legitimate third parties, but that would-be predators, sheltered by the internet's anonymity, can search nationally, or even globally, for victims willing to satisfy their particular lusts, or for pimping operations (like the "fantasy tour" operators here) able to supply appropriate victims. No other medium offers the broad range and comparative safety of the internet for matching clandestine customers with illicit wares. As the Sentencing Commission concluded, the Congressional purpose implemented by this enhancement was to "ensure that persons who . . . use computers or Internet-access devices to *locate* and *gain access* to a minor, are severely punished." *See* U.S.S.G. app. C, amend. 592, at 48 (emphasis added); *see also Robertson*, slip op. at 8-11 (discussing in more detail the concerns behind the enhancement). It would be inconsistent with Congress's broad intent to let offenders evade the enhancement simply by working out the logistics of an

internet-arranged tryst offline.

Accordingly, we read the term "facilitate" broadly, as did the district court. Black's Law Dictionary (7th ed. 1999) defines "facilitate" to mean, "[t]o make the commission of a crime easier." Thus, the question is whether Mr. McGraw's use of the internet made it easier for him to go on his illicit "fantasy tour." Certainly it did, by enabling him to connect with persons, halfway across the continent, who he thought would give him access to susceptible children. Without the internet, the task of finding and booking such a "fantasy tour" would have been considerably riskier and more difficult. Although this facilitation took place mainly by helping him conceive and negotiate the illicit "tour" rather than executing the logistics of his travel, nothing in the Guideline or application notes suggests that such facilitation is not covered.

Mr. McGraw's use of his computer fits exactly within the rationale for increased penalties for internet-aided sex crimes: by helping him find, halfway across the country, a place that promised to satisfy his appetite for sex with children and to arrange a meeting for that purpose. That facilitation alone is sufficient to justify applying the two-level enhancement.

Accordingly, we **AFFIRM** Mr. McGraw's sentence.

*United States v. McGraw*, No. 02-1407

**BRORBY**, Senior Circuit Judge, dissenting.

I respectfully dissent.

I dissent for the same reasons explained in my dissent in *United States v. Robertson*, ___ F.3d ___ (No. 03-1388) (10th Cir. Dec. 2, 2003). Accordingly, I would reverse Mr. McGraw's sentence and remand the case to the district court for further proceedings.